CULPEPPER IP, PLLC
Kerry S. Culpepper, Bar No. 9837
75-5737 Kuakini Highway, Suite 102
Kailua-Kona, Hawai'i 96740
Telephone:  (808) 322-3389
Facsimile:  (202) 204-5181
E-Mail:      kculpepper@culpepperip.com

Attorney for Plaintiff
Justice Everywhere Productions, LLC

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| Justice Everywhere Productions, LLC, <br><br> Plaintiff, <br> vs. <br><br> Doe 1, Doe 2, and Doe 3 <br><br> Defendants. | **Case No.: 17-cv-560** <br> (Copyright) <br><br> **COMPLAINT; EXHIBITS 1-2** <br><br> **(1) DIRECT COPYRIGHT INFRINGEMENT** <br><br> **(2) CONTRIBUTORY COPYRIGHT INFRINGEMENT** |

## <u>COMPLAINT</u>

Justice Everywhere Productions, LLC, files this Complaint against

Defendants Does 1-3 ("Defendants") and alleges as follows:

## I.    NATURE OF THE ACTION

1.    This matter arises under the United States Copyright Act of 1976, as

20-006A

amended, 17 U.S.C. §§ 101, et seq. (the "Copyright Act").

2.     The Plaintiff alleges that each Defendant is liable for: (1) direct copyright infringement in violation of 17 U.S.C. §§ 106 and 501; and, (2) contributory copyright infringement.

## II.     JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, et. seq., (the Copyright Act), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1338 (patents, copyrights, trademarks, and unfair competition).

4.     Defendants either reside in, solicit, transact, or are doing business within this jurisdiction, and have committed unlawful and tortious acts both within and outside this jurisdiction with the full knowledge that their acts would cause injury in this jurisdiction.  As such, Defendants have sufficient contacts with this judicial district to permit the Court's exercise of personal jurisdiction over each.

5.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) - (c) because: (a) all or a substantial part of the events or omissions giving rise to the claims occurred in this District; and, (b) all or the majority of the Defendants reside, and therefore can be found, in this State.  Additionally, venue is proper in this District pursuant 28 U.S.C. § 1400(a) (venue for copyright cases), because all or the majority of the Defendants or Defendants' agents reside or may be found in this District.

20-006A

### III.   PARTIES

### A.   The Plaintiff, Justice Everywhere Productions, LLC

6.      The Plaintiff Justice Everywhere Productions, LLC ("Justice") is a limited liability company organized under the laws of Georgia with principal offices in Los Angeles, California.

7.      Justice is an affiliate of Hannibal Classics, Inc., a production company with a notable catalog of major motion pictures.

8.      Justice is the owner of the copyright for the motion picture in the Work "*Vengeance: A Love Story*", (hereafter: the "Work") a major motion picture released in 2017.

9.      The Work stars Nicolas Cage, and is about a local police officer, dissatisfied with the justice system, takes matters into his own hands.

### B.   The Defendants

10.      The Defendants are members of a group of BitTorrent users or peers whose computers are collectively interconnected for the sharing of a particular unique file, otherwise known as a "swarm".  The particular file a BitTorrent swarm is associated with has a unique "hash" number, which in this case is:   SHA1: C7382BECD8C4E7E5324A5164F54C9C41328FA65A   (the   "Unique   Hash Number") shown in Exhibit 1.

20-006A

11.    Upon information and belief, each of the Defendants received from Plaintiff's agent at least a first notice per 17 U.S.C. 512(a) of the Digital Millennium Copyright Act ("DMCA notice") from their respective Internet Service Provider ("ISP") requesting the individual to stop infringement of the Work.

12.    The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants are unknown to Plaintiff who therefore sues said Defendants by such fictitious names.  Each Defendant is known to the Plaintiff only by an Internet Protocol address ("IP address") at which the alleged infringement took place.   An IP address is a number that is assigned by an Internet Service Provider (an "ISP") to devices, such as computers, that are connected to the Internet. The ISP to which a Defendant subscribes or uses can correlate a Defendant's IP address to a Defendant's true identity.  As shown on Exhibit 1 attached hereto, each of the Defendants' acts of copyright infringement occurred using an IP address traced to a physical address located within this District.   Plaintiff intends to subpoena the ISPs that issued the IP addresses in order to learn the identity of the account holders for the IP addresses.   Often the account holder will be a proper Defendant in this case.   However, further discovery may be necessary in some circumstances in order to be certain of the identity of the proper Defendant.  Plaintiff believes that information obtained in discovery will lead to the identification of each Defendants' true names and permit the Plaintiff to amend this Complaint to state

20-006A

the same.  Plaintiff further believes that the information obtained in discovery may lead to the identification of additional infringing parties to be added to this Complaint as defendants.  Plaintiff will amend this Complaint to include the proper names and capacities when they have been determined.  Plaintiff is informed and believes, and based thereon alleges, that each of the fictitiously named Defendants participated in and are responsible for the acts described in this Complaint and damages resulting therefrom.

13.    Plaintiff alleges on information and belief that each of the Defendants named herein performed, participated in, or abetted in some manner, the acts alleged herein, proximately caused the damages alleged herein, and are liable to Plaintiff for the damages and relief sought herein.

## IV.   JOINDER

14.    Pursuant to Fed. R. Civ. P. 20(a)(2), each of the Defendants was properly joined because, as set forth in more detail below, the Plaintiff asserts that: (a) each of the Defendants is jointly and severally liable for the infringing activities of each of the other Defendants; (b) the infringement complained of herein by each of the Defendants was part of a series of transactions over the course of a relatively short period of time, involving the exact same piece of the Plaintiff's copyrighted Work, and was accomplished by the Defendants acting in concert with each other; and (c) there are common questions of law and fact.

20-006A

## V.    FACTUAL BACKGROUND

### A. The Plaintiff Owns the Copyright to the Work

15.    The Plaintiff is the owner of the copyright for the motion picture for the Work.

16.    The Work is the subject of copyright registration application (Registration Number Pau 003-835-145) for the motion picture, and this action is brought pursuant to 17 U.S.C. § 411.  *See,* Exhibit "2".

17.    The motion picture is currently offered for sale in commerce.

18.    Defendants had notice of Plaintiff's rights through general publication and advertising and more specifically as identified in the content of the motion picture, advertising associated with the motion picture, and packaging and copies, each of which bore a proper copyright notice.

### B. The Defendants Used BitTorrent To Infringe the Plaintiff's Copyright

19.    BitTorrent is one of the most common peer-to-peer file sharing protocols (in other words, set of computer rules) used for distributing large amounts of data.

20.    The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. In short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the

20-006A

BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).

### *1. Each Defendant Installed a BitTorrent Client onto his or her Computer*

21.    A BitTorrent "Client" is a software program that implements the BitTorrent Protocol.  There are numerous such software programs which can be directly downloaded from the Internet.

22.    Once installed on a computer, the BitTorrent Client serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol.

23.    Each Defendant installed a BitTorrent Client onto his or her computer.

### *2. The Initial Seed, Torrent, Hash and Tracker*

24.    A BitTorrent user that wants to upload a new file, known as an "initial seeder," starts by creating a "torrent" descriptor file using the Client he or she installed onto his or her computer.

25.    The Client takes the target computer file, the "initial seed," here the copyrighted Work, and divides it into identically sized groups of bits known as "pieces."

26.    The Client then gives each one of the computer file's pieces, in this case, pieces of the copyrighted Work, a random and unique alphanumeric identifier

20-006A

known as a "hash" and records these hash identifiers in the torrent file.

27.     When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece is error-free. In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted.

28.     Torrent files also have an "announce" section, which specifies the URL (Uniform Resource Locator) of a "tracker," and an "info" section, containing (suggested) names for the files, their lengths, the piece length used, and the hash identifier for each piece, all of which are used by Clients on peer computers to verify the integrity of the data they receive.

29.     The "tracker" is a computer or set of computers that a torrent file specifies and to which the torrent file provides peers with the URL address(es).

30.     The tracker computer or computers direct a peer user's computer to other peer user's computers that have particular pieces of the file, here the copyrighted Work, on them and facilitates the exchange of data among the computers.

31.     Depending on the BitTorrent Client, a tracker can either be a dedicated computer (centralized tracking) or each peer can act as a tracker (decentralized tracking.)

20-006A

### 3. Torrent Sites

32.    "Torrent sites" are websites that index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol.  There are numerous torrent websites.

33.    Upon information and belief, each Defendant went to a torrent site to upload and download Plaintiff's copyrighted Work.

### 4. The Peer ID

34.    The BitTorrent Client will assign an identification referred to as a Peer ID to the computer so that it can share content (here the copyrighted Work) with other peers.

35.    Upon information and belief, each Defendant was assigned a Peer ID by their BitTorrent client.

### 5. Uploading and Downloading a Work Through a BitTorrent Swarm

36.    Once the initial seeder has created a torrent and uploaded it onto one or more torrent sites, then other peers begin to download and upload the computer file to which the torrent is linked (here the copyrighted Work) using the BitTorrent protocol and BitTorrent Client that the peers installed on their computers.

37.    The BitTorrent protocol causes the initial seeder's computer to send different pieces of the computer file, here the copyrighted Work, to the peers seeking to download the computer file.

20-006A

38.    Once a peer receives a piece of the computer file, here a piece of the copyrighted Work, it starts transmitting that piece to the other peers.

39.    In this way, all of the peers and seeders are working together in what is called a "swarm."

40.    Here, each Defendant peer member participated in the same swarm and directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions.

41.    In this way, and by way of example only, one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like the Work here, upload the torrent onto a torrent site, and deliver a different piece of the copyrighted Work to each of the peers. The recipient peers then automatically begin delivering the piece they just received to the other peers in the same swarm.

42.    Once a peer has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view the movie. Also, once a peer has downloaded the full file, that peer becomes known as "an additional seed," because it continues to distribute the torrent file, here the copyrighted Work.

***6. The Plaintiff's Computer Investigators Identified Each of the Defendants' IP Addresses as Participants in a Swarm That Was***

20-006A

### *Distributing the Plaintiff's Copyrighted Work*

43.     The Plaintiff retained Maverickeye UG ("MEU") to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the Internet to reproduce, distribute, display or perform the Plaintiff's copyrighted Work.

44.     MEU used forensic software to enable the scanning of peer-to-peer networks for the presence of infringing transactions.

45.     The MEU software extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the files identified by the SHA-1 hash value of the Unique Hash Number.

46.     The IP addresses, Unique Hash Number, and hit dates contained on Exhibit "1" accurately reflect what is contained in the evidence logs, and show: (1) that each Defendant had copied a piece of the Plaintiff's copyrighted Work; (2) the Work identified by the Unique Hash Number; and, (3) that, therefore, each Defendant was part of the same series of transactions.

47.     Through each of the transactions, each of the Defendants' computers used their identified IP addresses to connect to the investigative server from a computer in this District in order to transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Hash Number.

20-006A

48.     MEU's software analyzed each BitTorrent "piece" distributed by each sequentially integer numbered (1, 2, 3…20) IP address listed on Exhibit "1" and verified that re-assemblage of the pieces using a BitTorrent Client results in a fully playable digital motion picture of the Work.

49.     MEU's agent viewed the Work side-by-side with the digital media file that correlates to the Unique Hash Number and determined that they were identical, strikingly similar or substantially similar.

### 7. The Business of Piracy

50.     Internet piracy and in particular BitTorrent piracy, though known as peer-to-peer file sharing, is often a for-profit business as many software clients, torrent sites and networks generate millions of dollars in revenue through sales and advertising.

51.     To increase the value of the advertising and sometimes subscription access sold by torrent sites, many parties work to expand the pool of available titles and speed of downloads available by increasing the number of member peers and thus the desirability of their clients and networks.

52.     To accomplish this they often reward participants who contribute by giving them faster download speeds, greater access, or other benefits.

53.     Defendants' participation in the BitTorrent exchange of Plaintiff's motion picture is the type of activity that torrent sites use to promote their business

20-006A

and likely directly furthered the for-profit business of at least one torrent site.

54.     Many parties, and possibly Defendants, have been compensated for their participation in expanding the availability of pirated content to others through BitTorrent networks, including Plaintiff's motion pictures, even if only through being granted greater access to other pirated content.

55.     Based on activity observed associated with the Defendants' IP addresses, the Defendants are prolific proponents of the BitTorrent distribution system advancing the BitTorrent economy of piracy.

## VI. FIRST CLAIM FOR RELIEF

### (Copyright Infringement)

56.     Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

57.     Plaintiff is the copyright owner of the Work which contains an original work of authorship.

58.     By using the BitTorrent protocol and a BitTorrent Client and the processes described above, each Defendant copied the constituent elements of the registered Work that are original.

59.     The Plaintiff did not authorize, permit, or provide consent to the Defendants to copy, reproduce, redistribute, perform, or display its Work.

60.     As a result of the foregoing, each Defendant violated the Plaintiff's

20-006A

exclusive right to: (A) Reproduce the Work in copies, in violation of 17 U.S.C. §§ 106(1) and 501; (B) Redistribute copies of the Work to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501; (C) Perform the copyrighted Work, in violation of 17 U.S.C. §§ 106(4) and 501, by showing the Work's images; and, (D) Display the copyrighted Work, in violation of 17 U.S.C. §§ 106(5) and 501, by showing individual images of the Work non-sequentially and transmitting said display of the Work by means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publicly" display.)

61.     Each of the Defendants' infringements was committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

62.     By engaging in the infringement alleged in this Complaint, the Defendants deprived not only the producer of the Work from income that could have been derived when this film was shown in public theaters and offered for sale or rental, but also all persons involved in the production and marketing of this film, numerous owners of local theaters and retail outlets in Hawai'i and their employees, and, ultimately, the local economy.  The Defendants' misconduct therefore offends public policy.

63.     The Plaintiff has suffered damages that were proximately caused by each of the Defendants' copyright infringement including, but not limited to lost

14

20-006A

sales, price erosion, and a diminution of the value of its copyright.

## VII. SECOND CLAIM FOR RELIEF

## (Contributory Copyright Infringement)

64.    Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

65.    By participating in the BitTorrent swarm with the other Defendants, each Defendant induced, caused or materially contributed to the infringing conduct of each other Defendant.

66.    The Plaintiff did not authorize, permit, or provide consent to the Defendants inducing, causing, or materially contributing to the infringing conduct of each other Defendant.

67.    Each Defendant knew or should have known that the other BitTorrent users in a swarm with it were directly infringing the Plaintiff's copyrighted Work by copying constituent elements of the registered Work that are original.  Indeed, each Defendant directly participated in and therefore materially contributed to each other Defendants' infringing activities.

68.    The Plaintiff's agent sent to the ISP of each Defendant a notice per 17 U.S.C. 512(a) of the Digital Millennium Copyright Act ("DMCA notice") requesting the account holder (Defendants) to take measures to stop infringement of the Work or other Copyright protected works.

20-006A

69.     Upon information and belief, the respective ISP sent these notices to Defendants.

70.     Each of the Defendants' infringements was committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

71.     By engaging in the contributory infringement alleged in this Complaint, the Defendants deprived not only the producer of the Work from income that could have been derived when this film was shown in public theaters and offered for sale or rental, but also all persons involved in the production and marketing of this film, numerous owners of local theaters and retail outlets in Hawai'i and their employees, and, ultimately, the local economy.  The Defendants' misconduct therefore offends public policy.

72.     By continuing to permit use of the BitTorrent client at their IP addresses despite receiving at least one DMCA notice from Plaintiff's agent, Defendants induced, caused or materially contributed to the infringing conduct of other Defendants and unnamed individuals.

73.     The Plaintiff has suffered damages that were proximately caused by each of the Defendants' contributory copyright infringement including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

WHEREFORE, the Plaintiff respectfully requests that this Court:

(A) permanently enjoin each Defendant from continuing to infringe the

20-006A

Plaintiff's copyrighted Work;

(B) order that each Defendant delete and permanently remove the torrent file relating to the Plaintiff's copyrighted Work from each of the computers under each such Defendant's possession, custody, or control;

(C) order that each Defendant delete and permanently remove the copy of the Work each Defendant has on the computers under the Defendant's possession, custody, or control;

(D) award the Plaintiff either its actual damages and any additional profits of the Defendant pursuant to 17 U.S.C. § 504(a)-(b) or statutory damages pursuant to 17 U.S.C. § 504-(a) and (c), whichever is greater;

(E) award the Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(F) grant the Plaintiff any and all other and further relief that this Court deems just and proper.

DATED: Kailua-Kona, Hawaii, November 14, 2017.


CULPEPPER IP, PLLC

/s/ Kerry S. Culpepper
Kerry S. Culpepper

Attorney for Plaintiff
Justice Everywhere Productions, LLC

20-006A